[No. H022909. Sixth Dist. June 20, 2002.]

INTEGRAL DEVELOPMENT CORPORATION, Plaintiff and Appellant,
v.
HELMUT WEISSENBACH, Defendant and Respondent.

## COUNSEL

Robert H. Sloss for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Edward I. Silverman and John C. McCaslin for Defendant and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—Plaintiff Integral Development Corporation, a California corporation, filed this lawsuit against Helmut Weissenbach, a German citizen hired by plaintiff to manage its German subsidiary. The complaint contained various tort claims centering around allegations of misappropriation of trade secrets and unfair competition. Weissenbach made a special appearance and brought a motion to quash service of summons on grounds that there were not sufficient contacts with California to support the assertion of personal jurisdiction over him. The trial court granted the motion and dismissed the case. For the reasons explained below, we find that the assertion of jurisdiction in the circumstances of this case is fair and reasonable. We therefore reverse the trial court's order.

### BACKGROUND

Integral Development Corporation (Integral, or Integral-California) is a California corporation, with its principal place of business in Mountain

View, California. In 1996, Integral formed Integral Development Corporation (Europe) Ltd. (Integral-U.K.), to support its European operations. Integral-U.K. is a wholly owned subsidiary of Integral-California. Defendant Helmut Weissenbach is a German citizen, residing in Schwifting, Germany. In early 1997, officers of Integral-California interviewed Weissenbach to explore the possibility of hiring him to manage a German subsidiary of Integral-California that was yet to be formed. These discussions took place in Germany and in Holland with Harpal Sandhu, the president and CEO of Integral-California, and with Raj Patel, the vice-president of Integral-California and managing director of Integral-U.K.

In April of 1997, Weissenbach accepted an employment offer from Integral-California. At Integral's request, Weissenbach traveled to its headquarters in California to sign a letter agreement of employment. The letter agreement, dated April 10, 1997, and signed by Weissenbach on April 12, 1997, provided that Weissenbach would be Integral's general manager in Germany and would become the general manager of Integral's German subsidiary when it was established. He was to be responsible for the "expansion of Integral's business in Germany." Weissenbach would report directly to Integral's vice-president, Raj Patel, in California. Weissenbach was to be paid a salary in Deutschmarks, a commission based on revenues generated by the German office, and the opportunity to purchase stock options in Integral. Standard benefits applicable in Germany would be available to him once the German corporation was established. A later amendment to the contract provided that the employment could be terminated by either party by six months' written notice.

On August 1, 1997, an employment contract was signed by Weissenbach and by Patel. It provided that as of that date, Weissenbach was employed as general manager of the German subsidiary of Integral, called Integral Development GmbH (Integral-Germany), even though the company was not formally registered in Germany for another three months. This contract, entitled the "General Manager Contract," set forth Weissenbach's duties, which were to manage and represent Integral-Germany. Integral-Germany would pay his salary. The contract provided that it could be terminated at any time with a notice period of six months. It was signed by both parties in Munich, Germany. Integral-Germany was formally registered in Germany in November of 1997. It is a wholly owned subsidiary of Integral-U.K., which in turn is owned by Integral-California.

Integral provides business-to-business e-commerce solutions for capital markets. Integral's products and services were designed and developed by Integral-California. During the course of his employment, Weissenbach

regularly reported to the California office of Integral-California via telephone and e-mail regarding the progress of the business in Germany. He was also in touch with the director of human resources at Integral regarding expense receipts and other details of his compensation package. In November of 1997, Weissenbach traveled to California for a business meeting at Integral-California's offices to discuss the status of the business operations of Integral-Germany.

On March 31, 1998, Patel wrote to Weissenbach informing him that his formal employment with Integral would cease as of the following day, April 1, 1998. Integral would continue to pay Weissenbach his regular salary for three months while Weissenbach pursued a job search, after which the situation would be reviewed. Patel would take over the day-to-day operation of the German office. This letter originated from the office of Integral-U.K.

Weissenbach's attorney responded, asserting that there were two employment contracts, the April 1997 letter agreement with Integral-California and the August 1997 General Manager Contract with Integral-Germany, both of which provided for a six-month notice period. The attorney also pointed out that it was unclear which company was giving notice. On May 14, 1998, Patel, in his capacity as managing director of Integral-U.K., which was the sole shareholder of Integral-Germany, passed a formal resolution removing Weissenbach as managing director. On May 26, 1998, Patel wrote to Weissenbach, clarifying that his employment with Integral-Germany would terminate at the end of October 1998, in accordance with the six-month notice provided in the General Manager Contract. Patel informed Weissenbach that the terms of the letter agreement of April 10, 1997, did not apply because it issued from Integral-California and Weissenbach was formally employed by Integral-Germany. Patel wrote that Integral-California was "not a party of the employment contract between you and the German company." However, for "precaution purposes" Patel also gave notice, in his capacity as vice-president of Integral-California, that the letter agreement of April 10 was terminated.

Weissenbach's attorneys continued to try to negotiate and settle various compensation claims with Integral-California and Integral-Germany. Integral-California in turn claimed that Weissenbach had acquired confidential information regarding Integral's products, customers and employees while employed with Integral and that he was using this information to compete with Integral and to disrupt Integral's business. On August 3, 2000, Integral filed its complaint in this action in Superior Court in Santa Clara County, alleging causes of action for misappropriation of trade secrets, unfair competition, breach of fiduciary duty, intentional interference with economic

advantage, conversion and trade libel. According to Weissenbach, his claims for compensation from Integral were also pending "in the appropriate German court."

Weissenbach was served in Germany on October 18, 2000, and he filed a motion to quash service on December 29, 2000, on the basis that there were insufficient contacts between him and California to support jurisdiction. The motion was opposed and argued and the court issued a written order granting the motion and dismissing the complaint on February 21, 2001.

ISSUES

*General Principles Governing Personal Jurisdiction*

Pursuant to Code of Civil Procedure section 410.10, California's long-arm statute, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The long-arm statute "manifests an intent to exercise the broadest possible jurisdiction," limited only by constitutional considerations of due process. (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) The general rule is that a state may exercise personal jurisdiction over a nonresident defendant "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 444, quoting *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057].) Stated another way, "the forum state may not exercise jurisdiction over a nonresident unless his [or her] relationship to the state is such as to make the exercise of such jurisdiction reasonable." (*Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) As these tests suggest, the question of jurisdiction cannot be answered by the application of precise formulas or mechanical rules. Each case must be decided on its own facts. (*Id.* at p. 150.)

Personal jurisdiction may be either general or specific. (*Helicopteros Nacionales de Columbia v. Hall* (1984) 466 U.S. 408, 414-415 [104 S.Ct. 1868, 1872, 80 L.Ed.2d 404]; *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 445.) General jurisdiction may lie for all purposes if a defendant has established a presence in the forum state by virtue of activities in the state which are "extensive or wide-ranging" (*Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458

P.2d 57]) or " 'substantial . . . continuous and systematic.' " (*Cornelison v. Chaney, supra,* 16 Cal.3d at p. 147.) In such a case a defendant's contacts "take the place of physical presence in the forum as a basis for jurisdiction." (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446.)

If a nonresident defendant's activities in the state are not sufficient to allow the forum state to exercise general jurisdiction for all purposes, the state may nonetheless exercise specific jurisdiction "if the defendant has purposefully availed himself or herself of forum benefits (*Burger King* [*Corp. v. Rudzewicz* (1985)] 471 U.S. [462], 472-473 [85 L.Ed.2d 528, 540-541, 105 S.Ct. 2174]) and the 'controversy is related to or "arises out of" a defendant's contacts with the forum.' (*Helicopteros* [*Nacionales De Columbia v. Hall*], *supra,* 466 U.S. at p. 414 [80 L.Ed.2d at p. 411])." (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446.) Once a court decides that a defendant has purposefully established contacts with the forum state and that plaintiff's cause of action arose out of those forum-related contacts, the final step in the analysis involves balancing the convenience of the parties and the interests of the state in order to determine whether the exercise of personal jurisdiction is fair and reasonable under all of the circumstances. (*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at pp. 477-478 [105 S.Ct. at pp. 2184-2185]; *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at pp. 447-448.)

*Standard of Review*

■ Even though a motion to quash service of summons is defendant's motion, the initial burden of proof is on the plaintiff to show the minimum contacts justifying the imposition of personal jurisdiction. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at pp. 447-448.) "Once the facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of personal jurisdiction would be unreasonable." (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 449; *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at pp. 476-477 [105 S.Ct. at pp. 2184-2185].)

Integral contends there is no dispute here regarding the facts material to the question of jurisdiction and therefore that this is a purely legal issue which we review de novo. (*Walter v. Superior Court* (1986) 178 Cal.App.3d 677, 680 [224 Cal.Rptr. 41].) Weissenbach argues, on the other hand, that we must apply the substantial evidence standard on review. Under this standard we accept the trial court's resolution of factual disputes and " 'indulge in all reasonable inferences in support of the trial court's order.' " (*Gleaves v. Waters* (1985) 175 Cal.App.3d 413, 417 [220 Cal.Rptr. 621].)

Our review of the record reveals that the facts were largely undisputed. However, the parties contested each other's characterization of the facts and the legal conclusion to be drawn from those facts. (See, e.g., *Great-West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204 [252 Cal.Rptr. 363].) ■ The existence of personal jurisdiction will often present a mixed question of law and fact. (*Paccar Intern., Inc. v. Commercial Bank of Kuwait* (9th Cir. 1985) 757 F.2d 1058, 1062, fn. 4.) To the extent that there are factual conflicts, the trial court resolves those disputes and the substantial evidence standard governs our review. (*Thomas J. Palmer, Inc. v. Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 145 [164 Cal.Rptr. 181].) The ultimate question whether jurisdiction is fair and reasonable under all of the circumstances, based on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 476; *Felix v. Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 111 [241 Cal.Rptr. 670, 69 A.L.R.4th 1].)

### *Minimum Contacts*

■ The question whether there are minimum contacts necessary to support personal jurisdiction for purposes of a specific lawsuit involves an evaluation of "the interrelationship of the defendant's conduct, the forum and the claim." (*J. M. Sahlein Music Co. v. Nippon Gakki Co., Ltd.* (1987) 197 Cal.App.3d 539, 544 [243 Cal.Rptr. 4].) This inquiry lends itself to a two-step analysis: first, has defendant purposefully directed his or her activities at forum residents or purposefully derived benefit from forum activities; and second, does the controversy arise from defendant's contacts with the forum? Where there is such purposeful conduct by which defendant avails himself or herself of the privilege of conducting activities with the forum state, and such conduct results in a lawsuit, defendant must reasonably expect to submit to the burdens of litigation in the forum state. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446; *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at pp. 472-476 [105 S.Ct. at pp. 2181-2184].)

As noted above, although the basic facts here are not in dispute, the parties differ in the emphasis they place on certain facts and in their interpretation of the undisputed facts. Weissenbach emphasizes that he was employed by a German company, Integral-Germany, and that he was hired to manage business operations in Germany. The General Manager Contract was signed in Germany. He did not approach Integral-California seeking employment. Rather he was recruited in Europe by officers of Integral-California, who

were also officers of the European company, Integral-U.K. The recruitment and initial interviews took place in Europe. Weissenbach came to California only twice, both times at the request of Integral-California and for purposes relating to his position as manager of the German office. He had no job duties in California, conducted no business in California and had no customers in California. His job responsibilities related only to the performance of the company in Germany. He was paid by Integral-Germany in Deutschmarks. Integral-Germany was the entity that formally terminated his employment. And Integral-California repudiated any employment relationship with Weissenbach in Patel's letter to him of May 26, 1998, which informed him that "no relationship exists between you and the US company." Weissenbach contends these facts do not support a finding that he "purposefully" established contacts with California or availed himself of the benefits and protections of California law. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446.)

Integral, on the other hand, stresses the following facts. Integral-Germany was a wholly owned subsidiary of Integral-U.K., which in turn was owned entirely by Integral-California. Integral-U.K. was the sole shareholder of Integral-Germany. Officers of Integral-Germany were also officers of Integral-U.K. and Integral-California. Thus Integral-Germany was a separate entity from Integral-California in name only. As Integral's controller explained, Integral-Germany was formed as a subsidiary of Integral-California in order to permit the hiring of German nationals in compliance with German tax laws. At all times during his employment Weissenbach reported to the vice president of sales at Integral-California. The products offered through Integral-Germany were designed and developed by Integral-California. Personnel decisions for employees at Integral-Germany were approved by Integral-California. Marketing and sales were likewise overseen by Integral-California. Integral-California controlled contracting decisions relating to Integral-Germany. Weissenbach communicated regularly with Integral employees in California by e-mail and telephone regarding sales and personnel matters. His compensation was set and authorized in California, and the funds for his paychecks originated from Integral-California. He submitted expense reimbursement claims to Integral-California for approval in California. He was given the opportunity to participate in Integral's employee stock option plan, which was administered in California. During the short time he was employed by Integral, he traveled to the California headquarters twice, in order to finalize his employment relationship and later to attend business meetings and report on progress of the German subsidiary. Based on these facts, Integral contends that Weissenbach's employment relationship with the parent corporation in California to market and sell products designed and developed in California constituted the requisite minimal contacts to support the exercise of jurisdiction.

■ Weissenbach argues that, unlike many cases upholding personal jurisdiction based on minimum contacts, he conducted no business in California and had no contact with any customers in California at any time during his employment or thereafter. (See, e.g., *Magnecomp. Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 535 [257 Cal.Rptr. 278]; *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 113 [265 Cal.Rptr. 672].) We must consider, however, the nature of the claims as alleged against him. The complaint alleges that Weissenbach, during the course of his employment, acquired trade secrets and other confidential information regarding Integral's products, customers and employees, which he then used to cause harm to Integral and thus to Integral's customers and to its business revenues in California. The claims raised are thus directly related to Weissenbach's contacts with this state in that they arise from the employment relationship. We believe, therefore, that the requisite "substantial nexus" exists between the controversy at issue and the defendant's contacts with California. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 456; *Lundgren v. Superior Court* (1980) 111 Cal.App.3d 477, 483-484 [168 Cal.Rptr. 717].)

■ Furthermore, even without other contacts with the forum state, the commission of an intentional tort that is directed at a California resident may provide sufficient minimum contacts to support the exercise of personal jurisdiction over the nonresident defendant. (*Calder v. Jones* (1984) 465 U.S. 783 [104 S.Ct. 1482, 79 L.Ed.2d 804]; *Data Disc, Inc. v. Systems Tech. Assoc., Inc.* (9th Cir. 1977) 557 F.2d 1280; *Seagate Technology v. A.J. Kogyo Co.* (1990) 219 Cal.App.3d 696, 702-703 [268 Cal.Rptr. 586].) In *Calder v. Jones,* a California plaintiff brought a suit for defamation against a writer and the editor of the National Enquirer, a national newspaper based in Florida, but with a circulation of approximately 600,000 in California. The allegedly libelous story concerned a California resident whose television career was centered in California. The writer lived in Florida and did not personally visit California but relied on phone calls to sources in California for information contained in the article. On these facts the Supreme Court concluded that jurisdiction over defendants was proper "based on the 'effects' of their Florida conduct in California." (*Calder v. Jones, supra,* 465 U.S. at p. 789 [104 S.Ct. at p. 1487]. Defendants knew their article "would have a potentially devastating impact upon [plaintiff]. And they knew that the brunt of that injury would be felt by [her] in the State in which she lives and works and in which the National Enquirer has its largest circulation." (*Id.* at pp. 789-790 [104 S.Ct. at p. 1487].) Under the circumstances, the court found defendants must reasonably expect to be " 'haled into court' " in California to defend against plaintiff's tort claims. (*Id.* at p. 790 [104 S.Ct. at p. 1487]; *World-Wide Volkswagen v. Woodson* (1980) 444 U.S. 286, 297 [100 S.Ct. 559, 567, 62 L.Ed.2d 490].)

In *Data Disc., Inc. v. Systems Tech. Assoc., Inc., supra,* 557 F.2d 1280, a California plaintiff sold goods to an out-of-state defendant under a contract which was partially negotiated and formed in California. Jurisdiction with respect to plaintiff's tort claim was based on allegations that defendant made certain misrepresentations inducing plaintiff to sell its goods. The court found that this was a sufficient act to satisfy the requirement of minimum contacts, and that jurisdiction was reasonable because defendant's conduct was purposefully aimed at plaintiff. (See also *Panavision Intern., L.P. v. Toeppen* (9th Cir. 1998) 141 F.3d 1316, 1321 [the "purposeful availment" requirement is satisfied when defendant's intentional conduct cases harmful effects within the forum state.].)

 Here the allegations are that defendant misappropriated trade secrets and other confidential information from plaintiff and used this information to injure plaintiff, a California corporation. Defendant knew when he was hired and at all times thereafter that plaintiff, the parent company supplying the products and technology for the business, was a California-based corporation. Under the "effects" test of *Calder v. Jones, supra,* 465 U.S. at page 789 [104 S.Ct. at pages 1486-1487], defendant's tortious conduct, aimed at a California plaintiff, provides a reasonable basis for the assertion of jurisdiction.

Both Integral and Weissenbach rely on two leading cases discussing the reach of personal jurisdiction: *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th 434 (*Vons*), and *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. 462 (*Burger King*). Integral argues that our facts are similar to these cases and Weissenbach endeavors to distinguish them. *Burger King* involved a dispute arising out of a franchise agreement between the franchisor Burger King, located in Florida, and the franchisee located in Michigan. Although the defendant franchisee never physically entered the forum state, the court found that the defendant had purposefully directed his economic activities toward the forum state and had created an ongoing contractual relationship between himself and the Florida plaintiff. (*Burger King, supra,* at p. 476 [105 S.Ct. at p. 2184].) Moreover, the dispute grew out of a contract that had a " 'substantial connection' with the forum State." (*Id.* at p. 475 [105 S.Ct. at p. 2184].) Defendant's activities in *Burger King* included deliberately reaching out to negotiate the franchise agreement with the Florida franchisor, accepting the exacting regulation of his business from plaintiff's headquarters in Florida, engaging in a continuous course of mail and telephone contacts with Burger King in Florida, paying monthly franchise fees to Burger King in Florida, and allegedly engaging in conduct causing foreseeable injuries to the corporation in Florida. In addition, the court found it significant that defendant knew he was forming a business relationship with

plaintiff in the forum state and that his operations would be supervised by headquarters in that state. Furthermore, by affiliating with Burger King, defendant took advantage of significant benefits that would flow from plaintiff's established name and organization.

In the *Vons* case (*Vons, supra,* 14 Cal.4th 434), Jack-in-the-Box franchisees sued their franchisor and Vons Companies, the meat supplier for the franchisor, as a result of several incidents of food poisoning traced to hamburgers sold at Jack-in-the-Box restaurants. Vons filed a cross-complaint against several of the franchisees, including two in Washington State, on grounds that they had cooked the meat improperly. The court found that the out-of-state restaurant franchisees had substantial economic connections with the Jack-in-the-Box franchisor in California. Even though the case involved tort claims alleged by Vons and not claims by the franchisor arising directly from the franchisee-franchisor contract, as was the case in *Burger King,* the court found that the claims were sufficiently related to the franchisees' contacts with the franchisor in California to justify the exercise of jurisdiction.

Weissenbach argues that the nature and quality of his contacts with the forum state and his relationship with Integral-California were significantly weaker than those in *Burger King* and *Vons*. He did not purposefully reach into the forum state to form a substantial economic relationship with a forum resident. His employment agreement did not regulate virtually every aspect of the business, as did the franchise contracts in these cases. He had no similar ongoing contractual obligations related to California whereby he regularly paid substantial fees, royalties, advertising and rent to a California corporation. And there was no choice-of-law provision in either of his employment contracts designating California law as governing law, as there was in the contracts in *Vons* and *Burger King*. He points out that the court in *Burger King* observed that "a nonresident defendant does not necessarily become subject to the specific jurisdiction of the forum state simply by entering into a contract with a resident of the forum." (*Vons, supra,* 14 Cal.4th at p. 449; *Burger King, supra,* 471 U.S. at p. 478 [105 S.Ct at p. 2185].)

We agree that the typical franchisor-franchisee relationship supplies more significant contacts with the forum state than are present in our case. However, this is not a case where defendant's *only* contact with the forum state was the formation of a contract with a resident. The employment contract here represented the establishment of an ongoing business relationship between Weissenbach and the parent company in California, even though the relationship was to last only a little over a year. ■ The making and performance of a contract in California may be sufficient to

sustain jurisdiction even if the defendant has no other California contacts, so long as the cause of action asserted against defendant is based on the contract. "As the United States Supreme Court has explained, 'It is sufficient for purposes of due process that the suit was based on a contract which had *substantial connection* with [the forum] State.' . . . [Citation]." (*Safe-Lab, Inc. v. Weinberger* (1987) 193 Cal.App.3d 1050, 1053-1054 [238 Cal.Rptr. 712], fn. omitted.) ■ Here Weissenbach was hired by Integral-California and traveled to California to sign the letter agreement of employment. It specifically provided that he would report to the vice-president of sales in California, and that he would actively participate in "Integral's business management strategies and achievement of business goals." He maintained continuous and regular e-mail and telephone contact with officers and employees in the California company throughout the course of his employment. Officers and employees of Integral-California closely supervised the activities of the German company. As in *Burger King*, Weissenbach "knew he was affiliating himself with a business with headquarters in the forum state, and that his operations would be supervised by that headquarters." (*Vons, supra,* 14 Cal.4th at p. 450.) His duties were to represent Integral and its products and services and to guide the expansion of Integral's business in a new market. His salary, sales commissions and expenses originated from the Integral-California office. It thus appears, as in *Burger King*, that significant benefits flowed to him from the Integral name and organization. And indeed, according to Weissenbach, he presently has claims pending against Integral seeking benefits under the employment contract.

Furthermore, it is through his employment relationship with Integral that Weissenbach obtained the confidential information that is the subject of the tort claims in this case. The letter agreement of employment provided that he would oversee the expansion of Integral's business in Germany and would be responsible for representing Integral in various seminars and marketing events. In so doing he was expected to "become familiar, in some depth, with the technology and functionality of the Integral products." The activities alleged in the complaint, including unfair competition, misappropriation of trade secrets, and interference with economic advantage, if true, would have a direct effect on the California corporation. Thus the alleged injury arose from "the very activity that formed the essential basis of the defendant's contacts with California." (*Vons, supra,* 14 Cal.4th at p. 459; *Cornelison v. Chaney, supra,* 14 Cal.4th 16 Cal.3d 143.)

We conclude that Integral has clearly demonstrated the minimum contacts necessary to support jurisdiction in California for purposes of this lawsuit. However, the analysis does not end there. (*Sibley v. Superior Court, supra,* 16 Cal.3d 442.) These contacts must be considered in light of other factors to

determine whether the assertion of personal jurisdiction would be reasonable under all of the circumstances. (*Core-Vent Corp. v. Nobel Industries AB* (9th Cir. 1993) 11 F.3d 1482, 1487-1488; *Burger King, supra,* 471 U.S. at pp. 476-478 [105 S.Ct. at pp. 2184-2185]; *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664, 672 [190 Cal.Rptr. 175, 660 P.2d 399].)

*The Reasonableness Requirement*

■ "Reasonableness" is integral to the concept expressed by the Supreme Court in *Internat. Shoe Co. v. Washington, supra,* 326 U.S. 310, that the maintenance of a lawsuit against a foreign defendant must not offend " 'traditional notions of fair play and substantial justice.' " (*Id.* at p. 316 [66 S.Ct. at p. 158].) Once a plaintiff has shown the requisite minimum contacts to support jurisdiction, the burden shifts to defendant to show jurisdiction is not reasonable. An otherwise valid exercise of personal jurisdiction "is presumed to be reasonable." (*Nissan Motor Co., Ltd. v. Nissan Computer Corp.* (C.D.Cal. 2000) 89 F.Supp.2d 1154, 1160-1161.) Therefore, defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." (*Burger King, supra,* 471 U.S. at p. 477 [105 S.Ct. at p. 2185]; *Checker Motors Corp. v. Superior Court* (1993) 13 Cal.App.4th 1007, 1021 [17 Cal.Rptr.2d 618].) Our review of the reasonableness determination is de novo since there are no evidentiary disputes. (*Vons, supra,* 14 Cal.4th at p. 476.)

A determination of reasonableness rests upon a balancing of interests: the relative inconvenience to defendant of having to defend an action in a foreign state, the interest of plaintiff in suing locally, and the interrelated interest the state has in assuming jurisdiction. (*Buckeye Boiler Co. v. Superior Court, supra,* 71 Cal.2d at p. 899.) The factors involved in the balancing process include the following: "the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents or regulating the business involved; the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities." (*Cornelison v. Chaney, supra,* 16 Cal.3d at p. 151; *Core-Vent Corp. v. Nobel Industries AB, supra,* 11 F.3d 1482, 1487-1488; *Panavision Intern., L.P. v. Toeppen, supra,* 141 F.3d 1316.)

■ California has a manifest interest in providing a local forum for its residents to redress injuries inflicted by out-of-state defendants. (*Burger*

*King, supra,* 471 U.S. at p. 474 [105 S.Ct. at p. 2183].) The enactment of the Uniform Trade Secrets Act in California indicates a strong legislative intent to protect California residents against the misappropriation of their trade secrets. (See, e.g., *University Financing Consultants, Inc. v. Barouche* (1983) 148 Cal.App.3d 1165, 1170 [196 Cal.Rptr. 484].)

Weissenbach argues that in considering the relative burdens on plaintiff and defendant, the balance must weigh against the exercise of jurisdiction in this case since he is a resident of a foreign country and plaintiff is an international corporation with a strong presence in Europe. The burden on Weissenbach as an individual living in Germany to litigate in California is not insignificant. It is, however, only one factor in assessing reasonableness. "[U]nless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" (*Panavision Intern., L.P. v. Toeppen, supra,* 141 F.3d at p. 1323.) As the court observed in *Panavision,* " ' "in this era of fax machines and discount air travel," requiring [defendant] to litigate in California is not constitutionally unreasonable.' [Citations.]" (*Ibid.*) The fairness requirement of *International Shoe,* written over 50 years ago, must be assessed in the context of our age of global business and modern technology. "[T]he same technological progress in communication and transportation that has increased the flow of commerce between the states and the need for jurisdiction over nonresidents, has simultaneously decreased the burdens inherent in defending a lawsuit in a foreign tribunal." (*Rice Growers Assn. v. First National Bank* (1985) 167 Cal.App.3d 559, 580 [214 Cal.Rptr. 468].)

With regard to evidence and witnesses, proof of the claims alleged may require witnesses from both California and Germany. However, evidence of Integral's trade secrets and other confidential materials, and evidence of the harm resulting to Integral from the appropriation of its proprietary materials, will most likely be found in California. Weissenbach has not identified any particular witnesses or evidence located in Germany.

Weissenbach argues that " ' "the most efficient resolution of controversies" ' " (*Vons, supra,* 14 Cal.4th at p. 476; *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 113 [107 S.Ct. 1026, 1032-1033, 94 L.Ed.2d 92]) between the parties would be in Germany, since his claims against Integral in relation to the termination of his employment are already pending in "the appropriate German court." Thus an action in a California court could result in a multiplicity of lawsuits. However, Weissenbach offers no details regarding the nature or status of the German lawsuit and Integral-California has not been served with such a lawsuit. It is impossible to tell whether plaintiff's tort claims could be joined in the German proceeding.

Likewise there is no showing that plaintiff's trade secrets claims would be adequately protected under German laws.

In sum, given plaintiff's strong showing of the requisite minimal contacts with California, the nexus between those contacts and the claims raised in the lawsuit, and the allegations in the complaint that defendant has committed torts causing effects in California, we find defendant has not met his burden of presenting a "compelling" case that jurisdiction would be unreasonable under all of the circumstances. (*Burger King, supra,* 471 U.S. at p. 477 [105 S.Ct. at pp. 2184-2185].)

### DISPOSITION

The order granting defendant's motion to quash service of summons and dismissing the case is reversed. Appellant to have costs on appeal.

Mihara, J., and Rushing, J., concurred.