Filed 3/10/25  PacTec Holdings v. Shanghai Zhongyan Information etc. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PACTEC HOLDINGS, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SHANGHAI ZHONGYAN INFORMATION TECHNOLOGY CO., LTD.,<br><br>Defendant and Respondent. | B331766<br><br>(Los Angeles County Super. Ct. No. 21SMCV01618) |

APPEAL from an order of the Superior Court of Los Angeles County, Alison M. Mackenzie, Judge.  Affirmed.

Miller Barondess, Daniel S. Miller, Nadia A. Sarkis, and Wenfeng Su, for Plaintiff and Appellant.

Greenberg Traurig, Kurt A. Kappes, Todd Pickles, Samuel S. Hyde, Sierra T. Horton, Howard Holderness, and Michael D. Lane for Defendant and Respondent.

* * * * * *

A California-based company filed a lawsuit in California against a Chinese corporation. The Chinese corporation moved to quash for lack of personal jurisdiction. We independently agree with the trial court's order dismissing the Chinese corporation, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

**A.** ***Relationship of PacTec Software (Shanghai) Co., Ltd. (PacTec Shanghai) to California***

Plaintiff PacTec Holdings, LLC (PacTec Holdings) is a Delaware-based limited liability company and "resident of California." It claims to be the successor to OemTec, LLC (OemTec) and PacTec Shanghai.[1]

OemTec is a software development company that calls itself a "technology incubator." Between 2005 and 2008, OemTec had a physical office in Marina del Rey, California.

In 2005, OemTec's parent company opened PacTec Shanghai as a subsidiary to "support [the] research and development efforts" of OemTec. PacTec Shanghai hired its employees locally in China, but those employees worked "regularly and closely" with OemTec employees. Indeed, this "opportunity to work remotely, but closely, with a California tech

---

[1] Although PacTec Holdings never adduced any evidence supporting its allegation of being OemTec and PacTec Shanghai's successor, Zhongyan did not challenge its standing.

2

company" was one of PacTec Shanghai's "selling points" when recruiting employees in China.

As part of their work together, OemTec "provided PacTec Shanghai with proprietary information, data, research, and studies" to develop a cashback rebate website.

## B. *Gary Ge (Ge) works for PacTec Shanghai*

### 1. *Ge's citizenship, residence, and profession*

Ge is a Chinese citizen and lives in Shanghai, in the People's Republic of China (China).[2] He has never lived or worked in California. Ge is a "front-end web designer and developer."

### 2. *Ge is hired by PacTec Shanghai*

On February 20, 2006, Ge signed a three-year employment contract with a third-party entity (called Shanghai Foreign Service Co., Ltd.) in which he agreed to work for PacTec Shanghai. In that agreement, Ge promised (1) not to "disclose or profit from [any of PacTec Shanghai's] trade secrets," (2) not to "engage in any activity that conflicts with [PacTec Shanghai's] interests," and (3) to resolve any disputes through mediation, arbitration and litigation in China. In a supplemental employment agreement, Ge further promised (1) "not [to] engage in any other business activity that is in conflict with [his] duties and obligations or the interests of [PacTec Shanghai]," and (2) not to "use . . . any 'trade secret', 'proprietary information' or other

---

[2] Ge, whose Chinese name is Yongchang, also uses the anglicized name Gary. Any time there is a discrepancy in the record for the naming convention of an individual, we have deferred to the names used by counsel for defendant Shanghai Zhongynan Information Technology Co. Ltd.

'confidential information' . . . of [PacTec Shanghai or its] affiliates."

Ge performed all of his work for PacTec Shanghai while in Shanghai, and never traveled to the United States.

During the time Ge worked at PacTec Shanghai, the company and its affiliates "planned, researched, strategized, and worked on developing comparison shopping and affiliate marketing websites." This work included "a cashback rebate [web]site that directs shoppers to affiliated retailers and pay[s] shoppers a percentage of the commission it receives from those affiliated retailers when the shoppers purchase goods and services from them."

Ge stopped working for PacTec Shanghai in 2007.

### 3. *Ge creates 51fanli.com*

In 2006, while still working for PacTec Shanghai, Ge and his supervisor created a website called 51fanli.com, which gives customers the opportunity to receive cash back for purchases from its affiliates; 51fanli.com "exclusively advertised Chinese companies or products."

On October 23, 2006, Ge registered the 51fanli.com domain name. At that time, Ge held the "ownership of the system, mechanism, program, technology, data, and intellectual property" that enabled 51fanli.com to operate.

### C. *Ge forms Shanghai Zhongyan Information Technology Co., Ltd. (Zhongyan)*

On October 26, 2007, Ge and Wei Yuanyuan (Wei)—also a former PacTec Shanghai employee—formed Zhongyan, a Chinese corporation. On that day, Ge and Wei made an initial capital contribution of RMB30,000. Also on that day, "Ge transferred all of his ownership interest in 51fanli.com to [Zhongyan] as part of

Ge's consideration in exchange for being [Zhongyan's] majority shareholder." Ge became the 70 percent shareholder in Zhongyan and Wei became a 30 percent shareholder.

Zhongyan's principal place of business is in China. Zhongyan has no offices or businesses in California, no employees in California, and does not target any customers in California. Ge serves as Zhongyan's "CEO, general manager, shareholder, and legal executive director," and Wei as its "shareholder, supervisor, and . . . operating director."

In August 2010, a third shareholder invested in Zhongyan.

In May 2011, Zhongyan became the registrant for the 51fanli.com domain name.

## II. Procedural Background

### A. *Complaint*

On October 1, 2021, PacTec Holdings sued Ge, his supervisor, Zhongyan, and two other Chinese corporations for the theft of its cashback website idea that ultimately became 51fanli.com. Of the 12 causes of action alleged in the complaint, PacTec Holdings sued Zhongyan for (1) declaratory relief, (2) constructive trust, (3) conversion, and (4) theft under Penal Code section 496, subdivision (c). PacTec Holdings seeks damages in excess of $100 million.

### B. *Zhongyan moves to quash*

Through a special appearance, Zhongyan moved to quash the service of summons for lack of personal jurisdiction. Following jurisdictional discovery, a round of briefing, and a hearing, the trial court in June 2023 issued a written order granting the motion. Specifically, the court ruled that (1) PacTec Holdings did not "establish" that "Ge and Wei's alleged misappropriation of intellectual property from OemTec"

5

constituted "purposeful availment" of California as a jurisdiction, and, regardless, (2) it was inappropriate to impute any of Ge's contacts to Zhongyan because an individual's minimum contacts to a jurisdiction can be imputed to a corporation only if the party suing "faces substantial obstacles to recovery against" the individual, which was absent here.

### C. *Appeal*

PacTec Holdings filed this timely appeal.

## DISCUSSION

PacTec Holdings argues that the trial court erred in dismissing Zhongyan for lack of personal jurisdiction. "In reviewing a trial court's dismissal for lack of personal jurisdiction, we independently review the court's legal rulings and its application of the law to its factual findings," but "review those factual findings only for substantial evidence." (*Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 251 (*Jacqueline B.*).)

## I. Pertinent Law

### A. *Personal jurisdiction, generally*

California courts may assert personal jurisdiction as far as the United States Constitution allows. (Code Civ. Proc., § 410.10; *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 583 (*Weissenbach*) [noting that California's long-arm statute "'manifests an intent to exercise the broadest possible jurisdiction'"].) The federal Constitution upholds the exercise of personal jurisdiction over an out-of-state defendant as long as "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" (*Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 564 U.S. 915, 923, quoting

6

*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).)  "The 'minimum contacts' standard reflects an accommodation between the out-of-state defendant's 'liberty interest in not being subject to the judgments of a forum with which [it] has established no meaningful minimum "contacts, ties, or relations"' [citation] and the forum state's interest in its "'sovereign power to try causes in [its own] courts"'" (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 252, quoting *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*); *Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 263 (*Bristol-Myers*).)  Where a defendant has sufficient contacts with the forum state, the defendant's liberty interests under due process are not offended because those contacts make it so "the defendant should reasonably anticipate being subject to suit in that state."  (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 429 (*BBA Aviation*); *Pavlovich*, *supra*, 29 Cal.4th at p. 269 ["'When a [defendant] "purposefully avails itself of the privilege of conducting activities within the forum [s]tate," [citation], it has clear notice that it is subject to suit there'"].)

A court may exercise personal jurisdiction over a nonresident defendant that is specific to—or linked to—a case or controversy, including an intentional tort,[3] but only if:  (1) "the defendant has purposefully availed [itself] of forum benefits" (*Vons*, *supra*, 14 Cal.4th at p. 446); (2) the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" (*ibid.*, quoting *Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414); and (3) "'the assertion of personal jurisdiction

_____

[3]      There is no argument that Zhongyan is subject to *general* jurisdiction in California.

7

would comport with "fair play and substantial justice"'" (*Vons*, at p. 447, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 476 (*Burger King*); *Pavlovich*, *supra*, 29 Cal.4th at p. 268; *Walden v. Fiore* (2014) 571 U.S. 277, 286 (*Walden*) [applying this analysis to intentional torts]).  This test "is not susceptible of mechanical application," and turns on the facts of each case. (*Kulko v. Superior* Court (1978) 436 U.S. 84, 92; *Safieddine v. MBC FZ, LLC* (2024) 103 Cal.App.5th 1086, 1098 (*Safieddine*).)

A plaintiff bears the burden of establishing, by a preponderance of the evidence, the first two elements of specific jurisdiction—that is, that the defendant purposefully availed itself of forum benefits and that the controversy arises out of the defendant's contacts with the forum.  (*Pavlovich*, *supra*, 29 Cal.4th at p. 273; *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 428.)  To carry this burden, "[t]he plaintiff must provide specific evidentiary facts, through affidavits and other authenticated documents"; allegations in an unverified complaint will not suffice. (*Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 222; *Safieddine*, *supra,* 103 Cal.App.5th at p. 1099.)  But if the plaintiff carries that burden, the burden then shifts to the out-of-state defendant to show why the exercise of jurisdiction would be unreasonable.  (*Pavlovich*, at p. 273.)

**B.**    *Purposeful availment, defined*

To satisfy its burden of showing that a nonresident defendant "purposefully availed" itself of a forum state's benefits (thereby satisfying the first element of specific jurisdiction), a plaintiff can prove that the nonresident, even while physically out of state, nevertheless "'purposefully directed' [its] activities at

residents of the forum state."[4]  (*Burger King*, *supra*, 471 U.S. at pp. 472-476; *Vons*, *supra*, 14 Cal.4th at p. 446.)  This is the most relevant test where, as here, the nonresident defendant is accused of an intentional tort.  (*Casey v. Hill* (2022) 79 Cal.App.5th 937, 965.)  As its name suggests, the purposeful direction test is met only if the nonresident defendant's activity toward the forum state is "purposeful, deliberate, and intentional" (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 254); activity toward a forum state that is "random," "fortuitous," or "attenuated" will not suffice (*Pavlovich*, *supra*, 29 Cal.4th at p. 296).

In assessing whether specific jurisdiction exists, "[t]he inquiry . . . 'focuses on "the relationship among the defendant, the forum, and the litigation."'"  (*Walden*, *supra*, 571 U.S. at pp. 283-284, quoting *Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 775; *Calder v. Jones* (1984) 465 U.S. 783, 788 (*Calder*); *Bristol-Myers*, *supra*, 582 U.S. at p. 262 ["The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum [s]tate"].)  Although "a defendant's contacts with the forum [s]tate may be intertwined with [its] transactions or interactions with the plaintiff or other parties," "the plaintiff cannot be the *only* link between the defendant and the forum."

---

4       A plaintiff can also establish "purposeful availment" by showing that the nonresident defendant (1) purposefully derived benefit from its forum activities, (2) purposefully invoked the benefits and protections of the forum's laws, (3) deliberately engaged in significant activities with a state, or (4) deliberately created continuing obligations between itself and residents of the forum.  (*Vons*, *supra*, 14 Cal.4th at p. 446; *Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 253.)  None of these other avenues is at issue here.

(*Walden*, at pp. 285-286, italics added; *Swenberg v. dmarcian, Inc.* (2021) 68 Cal.App.5th 280, 295; *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 362 (*David L.*) ["Specific jurisdiction must rest on [the defendant's] own suit-related contacts *with California*, not merely a plaintiff who lives here"].)

In light of this focus on the nonresident defendant's connection with *the forum* (rather than with *the plaintiff*), the purposeful direction test is not met simply because the "defendant knew or should have known that his intentional acts would cause harm in the forum state." (*Pavlovich*, *supra*, 29 Cal.4th at pp. 270-271.) In other words, it is "no longer enough" in California "to base specific jurisdiction on a defendant's individualized targeting of a plaintiff known to reside in the forum state." (*David L.*, *supra*, 29 Cal.App.5th at p. 374.) "Instead," our Supreme Court has held, the plaintiff must prove, "in addition to the defendant's knowledge that his intentional conduct would cause harm in the forum," "intentional conduct expressly aimed at or targeting the forum state." (*Pavlovich*, at p. 271, italics omitted; *Safieddine*, *supra*, 103 Cal.App.5th at p. 1102 ["'[T]he defendant must expressly aim or target his conduct toward California, with the knowledge that his intentional conduct would cause harm in the forum'"]; *David L.*, at p. 373 [purposeful direction test also requires the defendant's "suit-related conduct [to] create[] a *substantial connection* with that state"]; accord, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.* (9th Cir. 2017) 874 F.3d 1064, 1069-1070 (*Axiom Foods*) ["while a theory of individualized targeting [of a plaintiff known to reside in the forum state] may remain relevant to the minimum contacts

10

inquiry, it will not, on its own, support the exercise of specific jurisdiction"].)[5]

## C. *Imputation of minimum contacts*

As a general rule, "[e]ach defendant's contacts with [a] forum [s]tate must be assessed individually." (*Calder*, *supra*, 465 U.S. at p. 790; *Rush v. Savchuk* (1980) 444 U.S. 320, 332.) However, where two defendants are effectively the same entity, courts have sometimes imputed one defendant's contacts with a forum state to the other defendant because, where such identity exists, the contacts of one are functionally the contacts of both, and *both* should reasonably anticipate being subject to suit in the forum state. (Accord, *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 429.) Two doctrines allowing for imputation of jurisdictional contacts are pertinent here.[6]

---

[5] PacTec Holdings cites several federal district court cases that find jurisdiction based on the nonresident defendant's knowledge that the plaintiff resides in the forum state (such that any harm will be felt in that state). Federal district court cases are at most persuasive authority (e.g., *Gray v. Quicken Loans, Inc.* (2021) 61 Cal.App.5th 524, 528, fn. 2); they are not persuasive at all where, as here, they employ a rule at odds with California law. We accordingly assign these cases no weight. (See, e.g., *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.* (N.D.Cal. 2016) 191 F.Supp.3d 1007, 1015-1017; *Adobe Sys. v. Blue Source Grp. Inc.* (N.D.Cal. 2015) 125 F.Supp.3d 945, 961-962; *Way.com v. Singh* (N.D.Cal. Dec. 20, 2018) 2018 U.S. Dist. Lexis 215243, *22; *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.* (W.D.Wash. Feb. 13, 2013) 2013 U.S. Dist. Lexis 19540, *17-*18; *Enertrode, Inc. v. Gen. Capacitor Co.* (N.D.Cal. Dec. 29, 2016) 2016 U.S. Dist. Lexis 179972, *11-*12.)

[6] Under a theory of agency, an agent's contacts with a forum state may be imputed to the principal by virtue of the principal's

11

The doctrine of successor liability applies when one corporation steps into the shoes of another; if applicable, the doctrine allows the successor corporation to be held responsible for the liabilities of its predecessor in derogation of the usual rule that corporate entities are distinct. (E.g., *Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, 778-779.) This doctrine has been applied in the context of personal jurisdiction to impute the predecessor corporation's contacts with the forum state to the successor corporation. (*CenterPoint, supra*, 157 Cal.App.4th at p. 1120; *Sanders v. CEG Corp.* (1979) 95 Cal.App.3d 779, 785, 790; accord, *Select Creations v. Palifito Am.* (W.D.Wash. 1994) 852 F.Supp. 740, 765.) However, the doctrine only applies if, as pertinent here, "the successor [corporation] is a mere continuation of the predecessor [corporation]." (*CenterPoint*, at p. 1120; *Franklin v. Usx Corp.* (2001) 87 Cal.App.4th 615, 621; accord, *Beatrice*, at pp. 778-779.)[7] One corporation will be found to be a "mere continuation" of its predecessor only when (1) "no adequate consideration was given for the predecessor

---

control over the agent. (*BBA Aviation, supra*, 190 Cal.App.4th at pp. 429-430; *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1118 (*CenterPoint*).) Here, there is no evidence that Zhongyan was controlling Ge, so this doctrine is irrelevant to the issues in this case.

[7] The successor liability doctrine also applies in other circumstances, such as when "'(1) there is an express or implied agreement of assumption [of liabilities], (2) the transaction amounts to a consolidation or merger of the two corporations,'" or (3) "'the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.'" (*Beatrice*, at p. 778, quoting *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28.) These other circumstances are not implicated here.

12

corporation's assets" and (2) "one or more persons were officers, directors, or stockholders of both corporations." (*CenterPoint*, at pp. 1120-1121; *Ray*, at p. 29; *Hernandez v. Enterprise Rent-A-Car Co. of San Francisco* (2019) 37 Cal.App.5th 187, 196-197.)

The doctrine of reverse veil piercing applies when an outsider "seeks to reach corporate assets to satisfy claims [it has] against an individual shareholder." (*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1518.) It is a species of the alter ego doctrine, which has been suggested to be an appropriate basis to impute contacts for personal jurisdiction purposes. (*Axiom Foods*, *supra*, 874 F.3d at p. 1071, fn. 5.) It is also an adaptation of the successor liability doctrine. (*Pringle v. Hunsicker* (1957) 154 Cal.App.2d 789, 794-795.) Either way it is categorized, courts will impute the individual's liabilities—and hence, the individual's contacts with the forum state—to the corporation created by the individual only when the individual and the corporation have a "close identity," such as when "'the corporate entity and the individual [are] one and the same.'" (*Pringle*, at pp. 794-795; *Postal Instant*, at p. 1518; *Economy Refining & Service Co. v. Royal National Bank* (1971) 20 Cal.App.3d 434, 439-440.) This doctrine is equitable in nature (see *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301), so it will not be applied when the corporation has paid consideration for the assets it acquired from the individual or when there are other, innocent shareholders relying on the corporate form. (*Postal Instant*, at p. 1513 [treating the individual and corporation as one can "harm innocent shareholders and corporate creditors"]; *Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 37 [treating the individual and corporation as one "creates unanticipated exposure for

13

innocent investors and secured and unsecured creditors who relied on the impregnability of the corporate form"]; *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 222-223 [looking to whether there are any "'innocent' member[s]" of the corporation]; *Pringle*, at pp. 792-793 [transfer to a corporation will not be ignored "where a full and adequate consideration is paid by the transferee"].)

## II. Analysis

### A. *Zhongyan's contacts with California*

Zhongyan did not *itself* purposefully direct any activities toward California. It did not come into existence until *after* Ge left the employ of PacTec Shanghai. And since then, Zhongyan has had no contact with California.

### B. *Imputation of Ge's contacts to Zhongyan*

In order to exert personal jurisdiction over Zhongyan by virtue of Ge's contacts with California, PacTec Holdings needs to prove that (1) Ge purposefully directed his activities toward California, and (2) imputation of Ge's contacts is appropriate.

#### 1. *Ge did not purposefully direct his activities toward California*

Ge is a Chinese citizen who worked for PacTec Shanghai from China. He was not employed by OemTec (the California company) or by its parent company. His sole employment was with PacTec Shanghai, which was located in China and which agreed to litigate any disputes with Ge in China. Although Ge had access to OemTec's intellectual property, PacTec Holdings did not offer any evidence that the intellectual property was not also located in China at the time it was allegedly stolen; the record is silent as to whether the intellectual property was exclusively stored on servers in California. (Cf. *WhatsApp Inc. v.*

14

*NSO Grp. Techs., Ltd.* (N.D.Cal. 2020) 472 F.Supp.2d 649, 672 [when it comes to intellectual property theft over the internet, "[t]he location of the servers is . . . not a fortuity but central to the alleged tortious conduct"]; *E3 Innovation Inc. v. DCL Techs. Inc.* (D.Ariz. Dec. 2, 2021) 2021 U.S. Dist. Lexis 231103, *25 [same].)

PacTec Holdings did not even establish that Ge *knew* OemTec was located in California (and hence that his theft of its intellectual property would have harmed OemTec in California),[8] although its evidence supported an inference that Ge certainly should have known. But even if we assume that Ge knew OemTec was located in California, knowledge that the plaintiff (or, here, the plaintiff's predecessor) is located in the forum state—and that harm would be suffered in that state—is insufficient to constitute purposeful direction under California law. (*Pavlovich*, *supra*, 29 Cal.4th at p. 271 [something more is required beyond "the defendant's knowledge that his intentional conduct would cause harm in the forum"].)

Yet PacTec Holdings offers nothing more. PacTec Holdings points to several federal district court cases applying California's test, but those cases all involve defendants with greater contacts with the forum state, such as a longer-term employment contract with a California-based employer, the hacking of California-based servers, or both. (E.g., *All-Tex, Inc. v. Aramsco, Inc.* (C.D.Cal. July 5, 2018) 2018 U.S. Dist. Lexis 249040, *1, *6 [defendant

_____

8      For the first time at oral argument, PacTec Holdings argued that a published article contained in the record shows Ge's knowledge. It does not. The article states that "Ge was a senior engineer at a U.S. internet company named Pactec Soft," presumably referring to PacTec Shanghai. But this sentence says nothing about the state in which that company was located or about Ge's knowledge thereof.

worked for California employer; stolen trade secrets located in California]; *Mee Indus. v. Adamson* (C.D.Cal. July 27, 2018) 2018 U.S. Dist. Lexis 227204, \*10-\*12 [same]; *Microsoft Corp. v. Mt. West Computers, Inc.* (W.D.Wash. July 22, 2015) 2015 U.S. Dist. Lexis 95663, \*15-\*18 [defendant contacted Washington-based servers]; *GM L.L.C. v. Autel.US Inc.* (E.D.Mich. March 29, 2016) 2016 U.S. Dist. Lexis 40902, \*13-\*14 [defendant stole content from forum-state servers]; *Vizant Tech, LLC v. Whitchurch* (E.D.Pa. 2015) 97 F.Supp.3d 618, 630 [defendant worked directly for in-forum employer]; see also *Weissenbach, supra*, 99 Cal.App.4th at p. 587 [same].)

> 2. *Imputation of Ge's contacts to Zhongyan is not warranted*

Even if we assume Ge's contacts were sufficient to constitute purposeful direction, it is inappropriate to impute Ge's contacts with California to Zhongyan because Ge and Zhongyan are not one and the same. Zhongyan paid Ge consideration for ownership of the 51fanli.com website—namely, Ge gave Zhongyan a capital contribution and ownership of the website and, in exchange, Zhongyan issued him a 70 percent ownership interest in the corporation. Further, Zhongyan is not solely owned by Ge. Although PacTec Holdings alleges that Wei—Zhongyan's other original shareholder—was involved in the intellectual property theft, PacTec Holdings opted not to sue her and has offered no evidence to support its allegations of Wei's involvement. What is more, Zhongyan now has a third shareholder who, on this record, has not been shown to have any involvement in the alleged misdeeds. Thus, Zhongyan is not the "mere continuation" of Ge under the successor liability doctrine,

16

and proceeding against Zhongyan under the reverse alter ego doctrine would harm innocent investors.

PacTec Holdings responds with two arguments. First, it argues that Ge did not receive consideration for the 51fanli.com website because Ge obtained his 70 percent of shares solely for his capital contribution. But this argument ignores that the shares were issued after Ge made his capital contribution *and* transferred ownership of the website; Ge also stated both were consideration for his shares. Although the *domain name* for the website was not transferred from Ge to Zhongyan until years later, ownership of the website was transferred contemporaneously with the issuance of stock. Second, PacTec Holdings argues that the successor liability doctrine applies because Zhongyan is nothing more than the reincarceration of Ge and Wei's partnership or Ge's sole proprietorship. This argument does not apply the appropriate legal standards, and is unsupported by the record.

\* \* \*

In light of our analysis, we have no occasion to consider whether the trial court erred, after citing *Rawlings v. D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, by refusing to impute Ge's contacts to Zhongyan because PacTec Holdings still had recourse against Ge directly. We also have no occasion to examine whether the other prongs of specific jurisdiction are met.

## DISPOSITION

The order is affirmed. Zhongyan is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

17

_____, P.J.
HOFFSTADT

I concur:


_____, J.
 MOOR

Pactec Holdings, LLC v. Shanghai Zhongyan Information
Technology Co., Ltd.
B331766


BAKER, J., Concurring



        With one further reservation I proceed to describe, I join
the opinion for the court with the exception of Parts I.A, I.B, and
II.B.1 of the Discussion section.  The reservation is this: I do not
believe the mere presence of additional "innocent" shareholders
in a successor entity (here, the third shareholder referenced by
the majority) always suffices to defeat successor liability.



                        BAKER, J.