Filed 10/15/15  Barry v. Talpa Holding CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL ROY BARRY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TALPA HOLDING, N.V. et al.,<br><br>    Defendants and Respondents. | B259696<br><br>(Los Angeles County<br>Super. Ct. No. SC121327) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard A. Stone, Judge.  Affirmed.

Liddle & Robinson, David M. Marek, for Plaintiff and Appellant.

Glaser Weil Fink Howard Avchen & Shapiro, Kerry Garvis-Wright, Julia B. Cherlow, Joshua D. Schein; Fross Zelnick Lehrman & Zissu, P.C., Richard Lehv, Emily Weiss, for Defendants and Respondents.

\* \* \* \* \* \*

An Irish citizen having no prior ties to California posted an idea for a television show on a California-based website, which he claims was co-opted by a Dutch citizen and thereafter exploited by a number of Dutch companies who eventually formed a California-based subsidiary that produces an America version of the show. The plaintiff sued the Dutch companies and individuals, as well as the American subsidiary, in Los Angeles. The Netherlands-based defendants moved to quash the lawsuit for lack of personal jurisdiction. The trial court dismissed them from the lawsuit, and denied the plaintiff's request for further discovery related to jurisdiction. Concluding there was no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

### I. Operative Complaint

In the operative first amended complaint (FAC), Michael Barry (plaintiff) alleges that he developed an idea for a television show that was later named *The Voice*. In 2008, he alleges, he uploaded the idea onto a website designed as a forum where writers can post their ideas and/or scripts for producers. The website, which is called *The TV Writers' Vault*, requires all visitors to keep confidential, and not to exploit, the ideas they view. In 2009, plaintiff contends, defendant Moos Stafleu (Stafleu) visited the website on behalf of her then-employer, defendant The Entertainment Group (TEG). Defendant Talpa Holding, N.V. (Talpa Holding) subsequently acquired TEG after TEG went into bankruptcy. In 2010, *The Voice of Holland* premiered in the Netherlands; defendants John de Mol (de Mol) and Talpa Content B.V. (Talpa Content) are credited with developing the show. In 2011, an American version of the show—*The Voice*—premiered.

### II. Jurisdictional Facts

Plaintiff is an Irish citizen.

Stafleu and de Mol are Dutch citizens. Neither Stafleu nor de Mol lives in California, is paid a salary by any California person or entity, owns any property in California, has a mailing address or telephone number in California, has a bank account

2

in California, or pays taxes in California. De Mol travels to California approximately three times a year, and spends less than half of that time on business "related to *The Voice*."

TEG was a Dutch corporation.

Talpa Holding is a "private Dutch holding and management company" headquartered in the Netherlands. De Mol founded Talpa Holding, and currently serves as the chairman of its board of directors. Talpa Holding itself has just eight employees and "does not conduct any business other than its ownership and management of the Talpa Subsidiaries." Among others, these subsidiaries include: (1) Talpa Content; (2) Talpa International B.V. (Talpa International); and (3) Talpa Media USA. Talpa Content is a "Dutch private limited liability company" that "creat[es] and develop[s] creative content, including scripted television shows, reality television shows, talent television shows, and game shows." As noted above, Talpa Content originally developed *The Voice of Holland*. Talpa International licenses rights to the shows developed by Talpa Content "to parties outside the Netherlands," and was the entity that licensed the rights to *The Voice* to Talpa Media USA. Talpa Media USA is based in California. Talpa Holding and Talpa Content maintain no offices, property, employees, bank accounts, mailing addresses, or telephone numbers in California; they are not registered or licensed to do business in California; their employees do not regularly travel to California; and they have "no involvement in the American version of *The Voice*."

## III. Litigation

Plaintiff filed suit against Stafleu, TEG, Talpa Holding, Talpa Content, Talpa Media USA, and de Mol in Los Angeles County Superior Court. In the FAC, plaintiff sued on theories of (1) breach of contract, because Stafleu—and, by extension, the other defendants—breached the confidentiality and nonexploitation contract formed by the terms of service on *The TV Writers' Vault* website, and (2) inducing a breach of contract, because Talpa Holding, Talpa Content, and de Mol induced Stafleu and TEG to breach

3

the website's terms of service. TEG was never served, and is not part of the lawsuit or this appeal.

All of the defendants except Talpa Media USA moved to quash due to lack of personal jurisdiction. After briefing, the trial court issued a written ruling granting the motion. The court found that plaintiff had not carried his burden of adducing evidence to show that the Dutch defendants (1) had a sufficiently pervasive presence in California to subject them to "general jurisdiction" in California, (2) had purposefully availed themselves of the benefits of California's law necessary to subject them to "specific jurisdiction," or (3) could be subjected to jurisdiction based upon Talpa Media USA's activities in California under theories of agency or alter ego. Instead, the court found that "Plaintiff's arguments hinge far too much on speculation, assumed facts, and, in some instances, assumptions based on other assumptions." The court also denied plaintiff's "implied request" for jurisdictional discovery.

The trial court thereafter dismissed Talpa Holding, Talpa Content, de Mol and Stafleu from the lawsuit, and entered judgment in their favor.

Plaintiff timely appeals.

## DISCUSSION

### I. Personal Jurisdiction

California grants to its courts the power to assert personal jurisdiction as far as the United States Constitution allows. (Code Civ. Proc., § 410.10; *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 583 (*Integral Development*) [California's "long-arm statute 'manifests an intent to exercise the broadest possible jurisdiction,' limited only by the constitutional considerations of due process"].) The federal Constitution upholds the exercise of personal jurisdiction over an out-of-state defendant as long as "the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.""" (*Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 131 S. Ct. 2846, 2853 (*Goodyear*), quoting *International Shoe Co. v. Washington* (1945) 326

4

U.S. 310, 316.) "Minimum contacts exist where the defendant's conduct in, or in connection with, the forum state is such that the defendant should reasonably anticipate being subject to suit in that state." (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 429 (*BBA Aviation*).) We proceed with special care when an out-of-state defendant is also an out-of-*country* defendant. (E.g., *In re Automobile Antitrust Cases I and II* (2005) 135 Cal.App.4th 100, 113 (*In re Automobile*).)

There are two types of personal jurisdiction: (1) "general or all-purpose jurisdiction" and (2) "specific or conduct-linked jurisdiction." (*Daimler AG v. Bauman* (2014) 134 S. Ct. 746, 751 (*Daimler*).) It is the *plaintiff's* burden to come forward with "competent"—that is, admissible—"evidence of jurisdictional facts" that would support a finding, by a preponderance of the evidence, of contacts sufficient to confer general or specific jurisdiction. (*BBA Aviation*, *supra*, 190 Cal.App.4th at pp. 428-429; *Nobel Farms, Inc. v. Pasero* (2003) 106 Cal.App.4th 654, 658.) Allegations in an unverified complaint, like the complaint we have here, are not enough. (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1091 ["(a)n unverified complaint has no evidentiary value in meeting the plaintiff's burden of proving minimum contacts"].) If, and only if, the plaintiff carries his burden is the out-of-state defendant called upon to show, in the context of specific jurisdiction, why the exercise of jurisdiction would nevertheless be unreasonable. (*BBA Aviation*, at p. 429.)

In evaluating a trial court's ruling as to whether there are sufficient contacts to confer personal jurisdiction, we review the court's factual findings, when the facts are disputed, for substantial evidence. (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17.) In so doing, we "accept the trial court's resolution of factual issues, [and] draw all reasonable inferences in support of the trial court's order . . . ." (*Ibid.*) When the facts are undisputed, or when we review the trial court's ruling regarding the reasonableness of exercising jurisdiction, our review is de novo. (*Integral Development*, *supra*, 99 Cal.App.4th at p. 585.)

5

The analysis of personal jurisdiction for Talpa Holding, Talpa Content, and de Mol differs from the analysis regarding Stafleu; each will be addressed separately.

### A. *Talpa Holding, Talpa Content, and de Mol*

Plaintiff advances three theories by which he contends that California courts have jurisdiction over Talpa Holding, Talpa Content, and de Mol: (1) general jurisdiction, based on their direct contacts with California; (2) specific jurisdiction, based on their direct contacts with California; and (3) general and specific jurisdiction, based on Talpa Media USA's contact with California. We will consider each theory separately.

### 1. General jurisdiction

When a California court has general jurisdiction over an out-of-state defendant, that defendant may be sued in California by anyone irrespective of the subject matter of the lawsuit. (*Walden v. Fiore* (2014) 134 S.Ct. 1115, 1121, fn. 6.) This broad, "all-purpose" jurisdiction will be found only when the out-of-state defendant's "'affiliations with the State are so "continuous and systematic" as to render [the defendant] essentially at home in the forum State.'" (*Daimler*, *supra*, 134 S.Ct. at p. 749, quoting *Goodyear*, *supra*, 131 S.Ct. at p. 2851.) Although other proof of continuous and systematic contacts can in rare cases be enough to make a defendant "at home" in a state, an individual is generally "at home" only in the state where he or she is domiciled, and a corporation is generally "at home" only in the states where it is incorporated and/or has its principal place of business. (*Daimler*, at p. 760.) Simply doing business in the forum state is not sufficient to confer general jurisdiction. (*Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 416-419 (*Helicopteros*) [corporate defendant sending its CEO to forum state for business meeting, accepting checks drawn on bank in forum state, purchasing equipment from business in the forum state, and sending personnel to forum state for training; no general jurisdiction]; cf. *Perkins v. Benguet Consol. Mining Co.* (1952) 342 U.S. 437, 448 [corporate defendant's president residing and maintaining office, maintaining company files, and overseeing company activities; general jurisdiction].)

6

There is substantial evidence to support the trial court's finding that Talpa Holding, Talpa Content, and de Mol did not have "continuous and systematic" dealings with California that would render California their "home." Talpa Holding and Talpa Content were formed and principally operated in the Netherlands; de Mol lives in the Netherlands. Nor do their limited business and personal dealings with California rise to the level of continuous and systematic affiliations with the state.

Plaintiff offers three arguments as to why the trial court erred in finding these defendants' contacts insufficient to confer general jurisdiction. First, plaintiff asserts that Talpa Holding, Talpa Content, and de Mol themselves produced *The Voice* in Los Angeles until Talpa Media USA was formed and assumed that task. Plaintiff points to language in Talpa Holding's website in 2014 referring to an entity called "Talpa Productions" as its "in-house production unit." But this is meaningless unless plaintiff also establishes that (1) Talpa Productions was producing *The Voice* in California prior to the formation of Talpa Media USA, and (2) Talpa Productions is an alter ego or agent of one of the defendants in this case. Plaintiff has not established either of these additional links. Further, the defendants each disclaim involvement in producing *The Voice*. In sum, plaintiff has not adduced evidence that any of the defendants was producing *The Voice*.

Second, plaintiff contends that Talpa Holding, Talpa Content, and Talpa Media USA functioned as a single body with de Mol as its head, acting as a unitary Talpa Media conglomerate. For support, he points to language on a website affiliated with Talpa Holding referring to Talpa Media USA as "its production company" and its "production arm," with de Mol at the "head" of the conglomerate. Plaintiff also points to news articles in third party sources that refer to Talpa Media USA as Talpa's "U.S. division." Although no defendant objected to these articles, the trial court did not rely on them; nor will we, because they constitute inadmissible hearsay. (Evid. Code, § 1200.) Plaintiff also cites *Hendricks v. New Video Channel America, LLC* (C.D.Cal. June 8, 2015, 2:14-cv-02989-RSWL-SSx) 2015 U.S.Dist. Lexis 74677 (*Hendricks*), which held that

7

California could exert general jurisdiction over a Canadian-based corporation for copyright infringement and breach of contract arising out of theft of a screenplay when the foreign corporation's wholly owned subsidiary operated in California. (*Id.* at pp. 17-21.)

We are unpersuaded. The representations on Talpa Holding's website (or, for that matter, in the third party articles) indicating that the various Talpa entities were working together as part of a media conglomerate do not mean that they were a single entity. (Accord, *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 432 ["The use of 'we' or 'the Company' . . . does not prove" that a holding company and its subsidiary "were a single entity in practice"]; see also *id.* at pp. 434-435 [sharing a single logo also not sufficient proof of a single entity].) *Hendricks* is also not dispositive. To begin, *Hendricks* found jurisdiction upon a "prima facie showing of personal jurisdiction" (*Hendricks*, *supra*, at p. 3; accord, *Fields v. Sedgwick Associated Risks, Ltd.* (9th Cir. 1986) 796 F.2d 299, 301); California, by contrast, requires the prerequisites to jurisdiction to be established by a preponderance of the evidence (*Moncrief v. Clark* (2015) 238 Cal.App.4th 1000, 1005). Further, and contrary to what *Hendricks* seems to suggest, the law in California is that "neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540 (*Sonora Diamond*).) More to the point, plaintiff's argument at most creates a conflict between the evidence he highlights and the statements to the contrary in the Dutch defendants' declarations. But it is well settled that a conflict in the evidence does not render it insubstantial. (See *Stephens v. County of Tulare* (2006) 38 Cal.4th 793, 804.) Here, the record contains sufficient evidence that each of the Talpa entities operated separately and this evidence constitutes substantial evidence supporting the trial court's ruling.

Third, plaintiff argues that de Mol—and, by extension, Talpa Content—are directly involved with *The Voice* show because (1) de Mol created the format for the

8

show and retains creative control over the format of *The Voice*, (2) de Mol is listed as executive producer of *The Voice*, and (3) de Mol has on occasion traveled to California to conduct business regarding the show, including receiving an Emmy Award. Occasional visits to a state for business are not sufficient to confer general jurisdiction (*Helicopteros*, *supra*, 466 U.S. at pp. 417-418). Further, de Mol's listing as executive producer and control over the show's format in general are not evidence of his direct involvement, or else he would be subject to jurisdiction in every one of the many countries in which the show is produced.

### 2. Specific jurisdiction

Unlike general jurisdiction, when a California court has specific jurisdiction over an out-of-state defendant, that jurisdiction only subjects that defendant to suit in California on the "issues deriving from, or connected with, the very controversy that establishes [the existence of specific] jurisdiction." (*Goodyear*, *supra*, 131 S.Ct. at p. 2851.) A court may exercise specific jurisdiction over an out-of-state defendant only if the defendant has (1) """""purposefully availed himself or herself of forum benefits"""""" (*Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 598 (*Bombardier*), quoting *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 446 (*Vons*)), (2) """""the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum"' [citation]"""""" (*Bombardier*, at p. 598), and (3) """""""the assertion of personal jurisdiction would comport with 'fair play and substantial justice'"""" [Citations.]" [Citation.]'" (*ibid*.).

In this case, the trial court's finding that Talpa Holding, Talpa Content, and de Mol did not purposefully avail themselves of California's benefits is supported by substantial evidence—namely, the declarations that these Dutch defendants conduct their business in the Netherlands and were not involved in the California-based production of *The Voice*. (Accord, *Asahi Metal Industry Co., Ltd. v. Superior Court* (1987) 480 U.S. 102, 116 (*Asahi*) [out-of-state corporation with no business, office, employees, property, advertisements or solicitation in the forum state; no purposeful availment].) Plaintiff's

9

arguments to the contrary echo the arguments he urged in favor of general jurisdiction—namely, that these defendants *were* involved in producing *The Voice* before Talpa Media USA was formed and that *Hendricks* should be followed. We reject these arguments for the reasons stated above.

Additionally, we concur with the trial court's conclusion that, even if these defendants had purposefully availed themselves of California's benefits, it would still be unreasonable to exercise specific jurisdiction over them. In assessing reasonableness, a trial court is to consider "(1) the burden on the defendant of defending an action in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining relief, (4) '"the interstate [or international] judicial system's interest in obtaining the most efficient resolution of controversies,"' and (5) the states' or nations' shared interest '"in furthering fundamental substantive social policies."' [Citation.]" (*Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 979.) Where, as here, the out-of-state defendants are from another country, "'great care and reserve should be exercised'" (*Asahi*, *supra*, 480 U.S. at p. 115; *F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 795-796, 805 (*Hoffman-LaRoche*)) because "defend[ing] oneself in a foreign legal system" subjects foreign defendants to "unique burdens" (*Asahi*, at p. 114).

On balance, these factors counsel against the exercise of personal jurisdiction. Talpa Holding, Talpa Content, and de Mol would all face "unique burdens" if forced to defend this lawsuit in California because they live and work on a different continent, in a country with a different language and a different legal system. Although California has a general interest in the development of the law governing intellectual property rights involving the film industry (*Hendricks*, *supra*, 2015 U.S.Dist. Lexis 74677, at pp. 20-21), California has no particular interest in *this* case because plaintiff himself is not a California resident and has few, if any, ties to California. Thus, California's "manifest interest in providing a local forum for its residents to redress injuries inflicted by out-of-state defendants" does not come into play. (*Integral Development*, *supra*, 99 Cal.App.4th

at pp. 591-592.)  Plaintiff makes much of the fact that evidence of Stafleu's "access" (ostensibly, Stafleu's exposure to plaintiff's idea on *The TV Writers' Vault* website) may be found in California, but "access" is an issue pertaining to copyright and plaintiff has not alleged any copyright violation.  Because California is no better a forum than the alternatives, the interests of the international judicial system (including Ireland, the Netherlands, and the United States) are not disserved by requiring plaintiff to litigate his claims elsewhere.

### 3. Imputed jurisdiction based on Talpa Media USA

Courts have on occasion exercised jurisdiction over an out-of-state defendant based not on *its own* activities in a state, but on the basis of *another person's or entity's* activities in that state.  In imputing one person's or entity's contacts with a state to another, courts have exercised general jurisdiction (e.g., *Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal.App.4th 1447 (*Paneno*)) and specific jurisdiction (e.g., *Daimler*, *supra*, 134 S. Ct. at p. 759, fn. 13).  Sometimes, they have analyzed imputation as a separate subspecies of general or specific jurisdiction (e.g., *Paneno*, at pp. 1455-1456); other times, they have factored imputation into the traditional tests for general or specific jurisdiction (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1169-1170).

Plaintiff seeks to impute Talpa Media USA's activities in California to Talpa Holding, Talpa Content, and de Mol under three theories:  (1) agency; (2) representative services; and (3) alter ego.

#### a. Agency

"Control is the key characteristic of the agent/principal relationship."  (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 541.)  Starting from "the 'firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business'" (*Hoffman-La Roche*, *supra*, 130 Cal.App.4th at p. 797), the degree of control necessary to create an agency relationship between a parent corporation and its subsidiary

11

is necessarily great: "[T]he parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary[,] and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy." (*Id.* at p. 798, italics omitted; *Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 541-542 [requiring "pervasive and continual" control and "parent's purposeful disregard of the subsidiary's independent corporate existence"].)

In this case, the trial court's finding that Talpa Media USA did not function as the agent of Talpa Holding, Talpa Content, or de Mol is supported by substantial evidence because plaintiff did not adduce evidence indicating that either Dutch corporation or de Mol, as the CEO of Talpa Holding, had "taken over performance" of Talpa Media USA's "day-to-day operations." To the contrary, the evidence indicates that Talpa Media USA was run by its own CEO, not de Mol.

### b.    *Representative services*

The doctrine of "representative services" is a species of agency relationship. (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 542, fn. 11; *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 430.) However, unlike agency and its focus on one entity's "control" over another, the representative services doctrine focuses on whether "the local agent essentially exists only to further the business of the [out-of-state defendant], and but for the local agent's existence, the [out-of-state defendant] would be performing those functions in the forum itself." (*BBA Aviation*, at p. 430; *Hoffman-La Roche*, *supra*, 130 Cal.App.4th at pp. 798-799.) Recently, the United States Supreme Court counseled against broad application of this doctrine: If the doctrine is read to create personal jurisdiction whenever the local agent performs a task that is "important" to the out-of-state parent corporation and that it would otherwise end up doing itself, the Supreme Court reasoned, the doctrine would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' [the Court] rejected in *Goodyear*." (*Daimler*, *supra*, 134 S.Ct. at p. 760.)

12

The representative services doctrine has been applied against corporate parents with local subsidiaries (e.g., *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 430) as well as between corporate "siblings" (e.g., *Paneno*, *supra*, 118 Cal.App.4th at p. 1457). Plaintiff seeks to invoke the doctrine against Talpa Holding (as Talpa Media USA's parent) and against Talpa Content (as Talpa Media USA's sibling corporation). Both arguments are without merit.

The representative services doctrine will subject a parent holding company to personal jurisdiction based on the subsidiary's activities in California only if the holding company "is not a legitimate holding company"—that is, if the holding company is "conduct[ing] its own operations or transactions." (*BBA Aviation*, *supra*, 190 Cal.App.4th at p. 431.) By contrast, where the holding company is legitimate, "the subsidiary is not performing a function that the parent would otherwise have performed itself" because "the holding company could simply hold another type of subsidiary." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 543.) As noted above, plaintiff did not present evidence that Talpa Holding was not a "legitimate holding company"; indeed, the evidence presented indicates that it was.

The representative services doctrine can also be used to impute contacts from one sister corporation to another. In *Paneno*, the court confronted two corporations—one based in California (CAPA-USA) and one based in England (CAPA-UK)—that jointly operated a student foreign exchange program. (*Paneno*, *supra*, 118 Cal.App.4th at pp. 1456-1457.) The court further observed that the two entities' division of labor was designed to insulate *both* corporations from "answering to any claim for negligence in California." (*Id.* at p. 1457.) The court concluded that CAPA-USA's contacts with California could be imputed to CAPA-UK. (*Ibid.*) This case is distinguishable because Talpa Content was not involved in Talpa Media USA's production of *The Voice*. Moreover, there is no evidence indicating that Talpa Content and Talpa Media USA were structured in such a way to evade suit in California; indeed, Talpa Media USA did not file a motion to quash in this case.

13

### c. Alter ego

Courts generally presume that a corporation is its own "legal entity, separate and distinct from its stockholders, officers, and directors, with separate and distinct liabilities and obligations." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 538.) However, that presumption is rebuttable and a plaintiff will be permitted to treat the corporation as the "alter ego" of another person or entity if he shows (1) "a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." (*Hoffman-La Roche*, *supra*, 130 Cal.App.4th at pp. 796-797.) In assessing whether there is a unity of interest and ownership, courts look to several indicia including the commingling of funds and other assets, one entity holding itself out as liable for the other's debts, identical equitable ownership, overlap in offices and employees, use of one entity as a shell for the other, inadequate capitalization, identical officers and directors, disregard of corporate formalities, and lack of segregation of corporate records. (*Sonora Diamond*, at pp. 538-539.) The alter ego doctrine is "an extreme remedy, sparingly used." (*Ibid.*)

The trial court's rejection of this theory is supported by substantial evidence. Plaintiff presented no evidence of commingling, jointly shared debts, identical equitable ownership, overlap in offices and employees, Talpa Media USA's existence as a "shell," inadequate capitalization, identical officers and directors, disregard of corporate formalities, or commingling of corporate records. Nor, for the reasons set forth in our analysis of reasonableness above, is it inequitable to require plaintiff to litigate his claims in another forum.

### B. Stafleu

Plaintiff argues that California courts have specific jurisdiction over Stafleu based on (1) her act of accessing *The TV Writers' Vault* website, which lists a Los Angeles street address, and agreeing to its terms of service, and (2) her involvement in the

production and distribution of *The Voice* in California. Plaintiff adduced no evidence to support this second theory, so we focus on the first.

The trial court's finding that Stafleu had not purposefully availed herself of the benefits of doing business in California is supported by substantial evidence. Stafleu's act of visiting, from the Netherlands, a website with a California street address, does not amount to purposeful availment. Stafleu did not attempt to solicit Internet business from California residents (*Snowney v. Harrah's Entertaiment, Inc.* (2005) 35 Cal.4th 1054, 1062) and did not engage in intentional conduct aimed at a forum resident that harms that resident (*Facebook, Inc. v. ConnectU LLC* (N.D.Cal. Aug. 13, 2007, C07-01389), 2007 U.S.Dist. Lexis 61962, at pp. 2-3, 6). All she did was access the website, and agree to its terms of service. At most, Stafleu entered into a contract with *The TV Writers' Vault*, but it is well settled that entering into a contract with a forum resident is not sufficient by itself to establish the contacts necessary for specific jurisdiction. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478.)

The trial court's conclusion that exercising jurisdiction over Stafleu would be unreasonable is also correct, for the same reasons that apply to the Talpa defendants.

## II. Jurisdictional Discovery

We review the trial court's ruling on a motion for a continuance for jurisdictional discovery for an abuse of discretion. (*In re Automobile*, *supra*, 135 Cal.App.4th at p. 127.) "In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*Ibid.*) Plaintiff has not articulated what discovery he would seek, how it would impact the analysis of jurisdiction, or why he could not have obtained the discovery during the many months the motions to quash were pending. The trial court accordingly did not abuse its discretion in denying plaintiff's request.

15

**DISPOSITION**

The judgment of dismissal is affirmed. Defendants are entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                        HOFFSTADT

We concur:

_____, P.J.
         BOREN

_____, J.
       ASHMANN-GERST

16