Filed 12/14/21  O'Donnell v. Mobility Lifter CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

JACOB O'DONNELL,

    Plaintiff and Appellant,

v.

MOBILITY LIFTER, LLC,

    Defendant and Respondent,

2d Civil No. B308996
(Super. Ct. No. 20CV02191)
(Santa Barbara County)

Respondent Mobility Lifter, LLC, is a Tennessee company that produces a stair-climbing device for a person with disablity. Appellant Jacob O'Donnell, a California resident, purchased the device from an independent dealer. Appellant was dissatisfied with the device. When respondent refused to permit him to return it, appellant brought an action against respondent. Appellant appeals an order granting respondent's motion to quash service of summons for lack of personal jurisdiction and dismissing the action. Appellant contends that he made a

sufficient showing of respondent's contacts with California to subject it to personal jurisdiction. We disagree and affirm.

*Factual Background*

<u>Appellant's Evidence</u>

Appellant is a paraplegic and is confined to a wheelchair. He resides in Santa Barbara. He wanted to visit his brother in Massachusetts, but the brother's home is "not wheelchair accessible owing to the steep inclined stairs that must be climbed in order to enter the home."

Appellant "started searching on the internet for the best device to allow [him] to climb the stairs of [his] brother's home." He "landed on the website of [respondent], Mobility Lifter, LLC, and reviewed their product[,] the 'Liftkar.'" He telephoned Jeanine A. Carroccio, respondent's CEO, and told her that he was interested in purchasing a Liftkar. Appellant said that, although he lived in California, the Liftkar must be sent to his brother's home in Massachusetts. Carroccio told appellant to contact her "'dealer' in [Massachusetts] named Mike." She said she "had dealers all over the country," including in California.

Appellant again telephoned Carroccio. She "stated that if I chose to purchase the Liftkar, it would literally change my life, and I would not want to return it, but if I did not like it, I did have the option to return it." About one month later, appellant telephoned Carroccio. "She ensured [*sic*] me the [Liftkar] would work great and if it did not, they would take it back."

Appellant contacted Mike and arranged to purchase the Liftkar from his company, Health Wise at Home (Health Wise), which is located in Massachusetts. Mike "repeated all of Ms. Carroccio's promises, including that the device could be returned if I was not happy with it." After the purchase, Mike went to

2

appellant's brother's home in Massachusetts and trained the brother on the use of the Liftkar. After the training was completed, Mike delivered the Liftkar to appellant's brother.

Appellant travelled to Massachusetts to visit his brother. "[T]he Liftkar did not perform as [respondent] promised." "I had to get on the floor and climb the stairs from the ground. . . . I had the attention of everyone at the home, including visitors that I have never met before. I was humiliated. I began crying due to the humiliation and frustration I was experiencing. . . . I was helped up each step slowly, careful to not succumb to causing any pressure sores or injuries that would require hospitalization to get to the main floor of the house." "I sat in the house with tears in my eyes for the remainder of the day and was not willing to leave the house until it was time to go to the airport [to return to California]."

Appellant notified Mike that the Liftkar "was not performing as promised." Mike said "that the steps to my brother's house were steeper than usual, and with those stairs, and with the wet climate, the Liftkar would not be a good option for entering [the brother's] home. When [appellant] asked [Mike] why he had not made that determination during the training, . . . Mike said 'I hoped it would work' or something to that effect."

Respondent refused to allow appellant to return the Liftkar and get his money back. Carroccio said he could sell it through the internet on eBay, but he would have to pay respondent's dealer to train the purchaser on its use. Mike said "that [his company] would not take the device back and similarly suggested [that appellant] sale [*sic*] it on the internet."

Respondent's Evidence

Respondent's motion to quash was accompanied by Carroccio's declaration in support of the motion.  The declaration is not included in the record on appeal.  In its ruling the trial court summarized Carroccio's declaration.  In his opening brief appellant "adopts the facts as forth in the Court's ruling."  The ruling's summary of Carroccio's declaration is as follows: "[Respondent] is incorporated in the state of Tennessee and has its principal place of [business in] Pleasant View, Tennessee. [Respondent's] owners and members are not residents of California and do not own any real property in California. [Respondent] is not registered and does not do business in California, does not have an office or mailing address in California, and does not have any employees in California.  [¶]  In early 2019, [appellant] contacted [respondent] to inquire about the Liftkar and specifically informed Carroccio that the product was intended to be used at his brother's residence in Massachusetts.  [Appellant] also informed her that the product needed to be shipped directly to the Massachusetts residence. Carroccio referred [appellant] to Health Wise, an independent dealer of the Liftkar located in Massachusetts, for any further inquiries about purchasing the product in Massachusetts. [Respondent] contracts with Health Wise as an independent dealer for the sale, shipment, and training on the use of the Liftkar in Massachusetts.  [Respondent] ships the Liftkar to Health Wise, which, in turn, sells and delivers the product and provides training on the use of the product to customers in Massachusetts."  (Citations to Carroccio's declaration omitted.)

4

*Procedural Background and Trial Court's Ruling*

Appellant filed an unverified complaint against respondent and Health Wise. The complaint consisted of five causes of action: violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq. (CLRA); negligence per se; violation of Business and Professions Code section 17200; breach of contract; and intentional misrepresentation. The misrepresentation was that "if the [Liftkar] . . . was not suitable for [appellant's] uses, Defendants would take the item back and refund the money."

Respondent moved to quash service of summons for lack of personal jurisdiction. The trial court granted the motion and dismissed the action as to respondent. The court concluded, "[Appellant] has not sustained his burden to establish the facts of general or specific jurisdiction over [respondent] by a preponderance of the evidence." The court explained: "The evidence establishes that [appellant] discovered [respondent's] product online and contacted [respondent] by phone, speaking with Carroccio. Carroccio described the product to [appellant] and promoted its quality. She then referred him to a dealer in Massachusetts where [appellant] wanted the product installed." "There is no evidence about [respondent's] website other than [that] it contained information about Liftkar." "It is uncontroverted that [respondent] did not directly solicit California residents or target [appellant] as a customer. . . . All [respondent] did was ship the product from Tennessee to its dealer in Massachusetts. All of the dealer's work was done in Massachusetts. [Respondent] did not 'reach back' to California or have a continuing obligation to do anything in California."

*Appellant's Burden of Proof and Standard of Review*

"On a challenge to personal jurisdiction by a motion to quash, the plaintiff has the [initial] burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction. [Citation.] The plaintiff must come forward with affidavits and other competent evidence to carry this burden and cannot simply rely on allegations in an unverified complaint. [Citation.] If the plaintiff meets this burden, 'it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable.'" (*ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 209-210).

"When no conflict in the evidence exists, . . . the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*), impliedly abrogated on other grounds in *Bristol-Myers Squibb v. Superior Court* (2017) __ U.S. __, [137 S. Ct. 1773, 1781].) Appellant contends that "the facts are not in dispute." Respondent does not challenge his contention. We therefore independently review the record.

*General and Specific Jurisdiction over the Person*

"California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. [Citation.] A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate "'traditional notions

6

of fair play and substantial justice."'" (*Vons*, *supra*, 14 Cal.4th at p. 444.) "[E]ach individual has a liberty interest in not being subject to the judgments of a forum with which he or she has established no meaningful minimum 'contacts, ties or relations.'" (*Id.* at p. 445.)

"Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.'" (*Vons*, *supra*, 14 Cal.4th at p. 445.) Appellant does not claim respondent was subject to the trial court's general jurisdiction. He claims it was subject to the court's specific jurisdiction.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'" (*Walden v. Fiore* (2014) 571 U.S. 277, 283-284 (*Walden*).) "A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum"' [citation]; and (3) '"the assertion of personal jurisdiction would comport with 'fair play and substantial justice'"' [citations]." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).)

"For a State to exercise [specific] jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. . . . [¶] First, the relationship [between the defendant and the forum] must arise out of contacts that the 'defendant himself' creates with the forum State. [Citation.] Due process limits on the

7

State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. [Citation.] . . . [¶]  Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. [Citations.]"  (*Walden, supra,* 571 U.S. at pp. 284-285.)  "'[T]he "minimum contacts" test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.'"  (*Pavlovich, supra,* 29 Cal.4th at p. 268.)

*No Personal Jurisdiction Based on*
*Respondent's Minimum Contacts with California*

We agree with the trial court that appellant failed to prove by a preponderance of the evidence sufficient minimum contacts between respondent and California.  Respondent's passive web site was insufficient.  (*Pavlovich, supra,* 29 Cal.4th at p. 274 [no personal jurisdiction "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions"].)

The present case is similar to *Shisler v. Sanfer Sports Cars, Inc.* (2006) 146 Cal.App.4th 1254 (*Shisler*).  There, defendant was incorporated and located in Florida.  It had "never directly advertised in [California], and ha[d] never intentionally targeted any California resident as a potential buyer or seller of an automobile. . . .  The company maintain[ed] a Web site that [was] accessible to anyone in the world with access to the Internet.  The Web site [did] not target California residents." (*Id.* at p. 1257.)  The plaintiff saw a used BMW "advertised on defendant's Web site.  The Web site stated that defendant shipped vehicles 'worldwide.'  Plaintiff wrote to and telephoned defendant to

8

inquire about the vehicle and he ultimately decided to purchase it. The contract for sale of the vehicle was prepared in Florida and mailed to plaintiff in California." (*Id.* at pp. 1257-1258.)

When the vehicle arrived in California, it was not what plaintiff had expected. He sued defendant in California for violation of the CLRA, common law fraud, and misrepresentation. The appellate court upheld the granting of defendant's motion to quash service of summons. It reasoned: "[T[here is no evidence that this was anything other than a one-time transaction. Further, there is no evidence that defendant ever expressly reached out to California in search of this or any other business opportunity. After the vehicle left defendant's business in Florida, defendant's only further contact with plaintiff concerned the dissatisfaction that led to the instant lawsuit. There was no ongoing business relationship." (*Shisler, supra*, 146 Cal.App.4th at pp. 1261-1262.) *Shisler* rejected plaintiff's claim "that defendant's use of fax, telephone, United States mail, e-mail and its 'interactive' Web site to communicate with plaintiff and negotiate the sale of the vehicle is sufficient to establish . . . [that defendant] "'purposefully and voluntarily direct[ed] [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receive[d], to be subject to the court's jurisdiction based on" [its] contacts with the forum.'" (*Id.* at p. 1260.)

As in *Shisler*, here respondent did not contact or target appellant with the intention of inducing him to purchase the Liftkar. Appellant contacted respondent by telephoning Carroccio. Respondent did not "reach[] out to California in search of this or any other business opportunity." (*Shisler*, *supra*, 146 Cal.App.4th at p. 1262.) Appellant reached out to respondent.

9

The sale of the Liftkar was "a one-time transaction. . . . There was no ongoing business relationship." (*Id.* at pp. 1261-1262.)

The evidence supporting the absence of minimum contacts is stronger here than in *Shisler*. Unlike the defendant in *Shisler*, respondent did not negotiate the sale of the Liftkar. The sale was negotiated by an independent dealer in Massachusetts. Moreover, appellant did not pay respondent, and he did not take delivery of the Liftkar in California. Appellant paid the independent dealer, who trained appellant's brother and delivered the Liftkar to the brother's home in Massachusetts.

*No Personal Jurisdiction Based on*
*Respondent's Commission of Intentional Tort*

Appellant argues that the trial court had personal jurisdiction over respondent because Carroccio committed an intentional tort (misrepresentation) that caused financial injury to him in California. In support of his argument, appellant cites *Calder v. Jones* (1984) 465 U.S. 783 (*Calder*). (See *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 587 [relying on *Calder*, court stated, "even without other contacts with the forum state, the commission of an intentional tort that is directed at a California resident may provide sufficient minimum contacts to support the exercise of personal jurisdiction over the nonresident defendant"].)

In *Calder* the defendants were Florida residents. In Florida they wrote and edited a libelous article about Shirley Jones, an entertainer and California resident. "The article was published in [the National Enquirer,] a national magazine with a large circulation in California." (*Calder*, *supra*, 465 U.S. at p. 784.) The magazine's owner was a Florida corporation with its principal place of business in Florida. The United States

10

Supreme Court concluded that California courts had personal jurisdiction over the defendants based on the effects of the article in California: "The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over [defendants] is therefore proper in California based on the 'effects' of their Florida conduct in California." (*Id.* at pp. 788-789.) The Supreme Court further explained: Defendants' "intentional, and allegedly tortious, actions were expressly aimed at California. . . . Under the circumstances, [defendants] must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." (*Id.* at pp. 789-790.)

"Although *Calder* involved a libel claim, courts have applied [*Calder's*] effects test to other intentional torts . . . ." (*Pavlovich, supra*, 29 Cal.4th at p. 270.) "[M]ost courts agree that merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects test. [Citations.] Instead, the plaintiff must also 'point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum . . . .' [Citation.]" (*Id.* at pp. 270-271.) In *Pavlovich* the California Supreme Court rejected decisions "making the location of the harm dispositive" and "join[ed] with those jurisdictions that require additional evidence

11

of express aiming or intentional targeting." (*Id.* at pp. 272-273.) Here, appellant has not "'point[ed] to contacts which demonstrate that [respondent] *expressly aimed* its tortious conduct at [California].'" (*Id.* at p. 271.) Respondent aimed its allegedly tortious conduct at a particular individual – appellant –who happened to reside in California. Except for appellant's residence in California and his telephone calls from California to Carroccio, respondent's conduct had nothing to do with the forum state.

The United States Supreme Court clarified the *Calder* effects test in *Walden, supra,* 571 U.S. 277: "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Id.* at pp. 289-290.) "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff. . . . [T]he reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. . . . In this way, the 'effects' caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." (*Id.* at pp. 287-288.)

12

In contrast to *Calder*, the effects caused by respondent's misrepresentation amounted to a "mere injury to a forum resident," which "is not a sufficient connection to the forum" for the exercise of personal jurisdiction over respondent. (*Walden*, *supra*, 571 U.S. at p. 290.) Appellant is the only link between respondent and California, but "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. . . . [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." (*Id.* at pp. 285-286.)

*Disposition*

The order granting respondent's motion to quash service of summons and dismissing the action as to respondent is affirmed. Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

13

Thomas P. Anderle, Judge

Superior Court County of Ventura

_____

Andre L. Verdun, for Plaintiff and Appellant.

Anna Yeung, for Defendant and Respondent.